IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAHEEM GLENN, ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | Civil Action No. 05-314 |
| ) | Judge Arthur J. Schwab |
| DR. BARUA, ROBERT TRETINIK, ) | Magistrate Judge Caiazza |
| and KEN DIDDLE, ) | |
| ) | |
| Defendants. ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I. RECOMMENDATION**

It is respectfully recommended that the Motions to Dismiss filed by the Defendants Ken Diddle, Robert Tretinik and Dr. Barua be granted.

**II. REPORT**

The Plaintiff, Raheem Glenn ("the Plaintiff" or "Glenn"), an inmate incarcerated at the State Correctional Institution at Greene, located in Waynesburg, Pennsylvania (SCI-Greene), commenced this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983 against the following Defendants: Dr. Barua, an orthopedic specialist; Ken Diddle ("Diddle"), a physician's assistant; and Robert Tretinik ("Tretinik"), the Corrections Health Care Administrator at SCI-Greene. In his Complaint, the Plaintiff alleges that the Defendants denied him proper medical care for a fractured bone in his leg. All three Defendants have filed Motions to Dismiss the Complaint with supporting briefs.

The Plaintiff has filed motions in opposition to each motion with supporting briefs.

A. **Standard of Review**

All of the Defendants have filed a Motion to Dismiss. (Docs. 15, 18 & 20). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss may be granted by the court if it is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegation." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41 (1957). The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Neitzke v. Williams, 490 U.S. 319 (1989); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The complaint must be read in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. Estelle v. Gamble, 429 U.S. 97 (1976).

B. **The Allegations in Glenn's Complaint**

Glenn alleges that on June 3, 2003, he was playing basketball in the north yard at SCI-Greene when he slipped on a rock and fractured a bone in his leg. He was taken to the medical department where Dr. Barua, an orthopedic surgeon, informed him that he had a fractured tibia bone. Although no x-rays were taken

at that time a cast was placed on his leg. A subsequent x-ray taken on June 6, 2003, revealed that his tibia *and* fibula bones were fractured. Because of pain complaints involving a bone which "kept on moving and popping back and forth", Glenn appeared at sick call on June 16, 2003 and was examined by Physician's Assistant Ken Diddle and a nurse. He alleges that Diddle told him that his bone was not "popping back and forth" and that he would not be prescribed any additional pain medication -other than the medication that he already was receiving three times a day. He was also informed that his cast was suitable for the fractured bones in his leg.

On June 23, 2003 Glenn returned to sick call and complained that Dr. Barua placed a cast on his left leg without the benefit of an x-ray and that his foot was "turned out to the right"; he also alleges that he continued to experience pain. After awhile Defendant Tretinik entered the treatment room and ordered him to leave the medical area and threatened to send him to the Restricted Housing Unit if he refused to obey his order.

Next, on July 1, 2003, another x-ray was taken of the Plaintiff's leg. On July 3, 2003, Dr. Barua examined both the first x-ray and the subsequent x-ray. He informed Glenn that "not much had changed between the two [x-rays]" but "in . . . it looks a little worse." Dr. Barua exchanged the Plaintiff's cast for one that extended below Glenn's knee and which immobilized his

movement. Glenn alleges that Dr. Barua told him that "this is the cast that should have been put on the first time but I did not think that it was broken this bad."

On July 9, 2003, the Plaintiff reported to the medical department and additional x-rays were taken. The following day he was transported back to Dr. Barua's office. During the visit Dr. Barua examined the July 9, 2003 x-rays and then directed that Glenn be returned to the institution. On August 1, 2003, the Plaintiff claims that he was forced to ambulate in his cell for four days without his crutches -which put pressure on his leg and caused his cast to break and dig into his flesh. Next, on August 8, 2003, another x-ray was taken and once again Glenn was transported to Dr. Barua's office. He informed Dr. Barua that he had ambulated in his cell for four days without his crutches, that he continued to experience pain and that part of his cast had broken and poked into his leg. Dr Barua told Glenn that it was unnecessary to change the cast, that there was nothing he could do to remedy the pain but that he should have had access to his crutches. At that time Dr. Barua also mended the Plaintiff's broken cast.

Next, Glenn was examined by physicians assistant Diddle when he appeared for sick call on September 4, 2003. The Plaintiff claims that Diddle attempted to insert his finger into the Plaintiff's cast to determine if he could detect any evidence

of blood. Diddle apparently concluded that there was no obstruction in the cast that aggravated Glenn's leg. On October 2, 2003, Dr. Barua removed a part of Glenn's cast in order to observe both the Plaintiff's leg and the inside portion of the cast. The Plaintiff claims that Dr. Barua observed blood on the inside of the cast; to preserve the evidence he requested that pictures be taken by prison personnel.

On November 6, 2003, Glenn reported to the medical department. His cast was removed and an x-ray was taken. Because his foot was misaligned he was examined by either a physician's assistant or Dr. Barua at SCI-Greene on multiple occasions; *i.e.*, January 7, 2004, February 9, 2004, February 27, 2004 and March 3, 2004. On March 26, 2004, Glenn was given a cane to use until June 26, 2004; however on June 2, 2004, the cane was taken from him and he was put on medical lay-in for seven days. On July 6, 2004, Dr. Barua examined the Plaintiff and, at some point during the intervening treatment, Glenn was provided with a leg brace. Prior to filing this Complaint Glenn continued to experience pain whenever he walked without the leg brace.

### C. **Liability under 42 U.S.C. § 1983**

To state a claim under the provisions of 42 U.S.C. § 1983, a plaintiff must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2)

that as a result, he or she was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986). As a convicted and sentenced prisoner, Glenn's claim invokes the protections of the Eighth Amendment as applied to the states through the Fourteenth Amendment. In order to set out an Eighth Amendment claim an inmate must first show that the condition, either alone or in combination with other conditions, deprived him or her of "the minimal civilized measure of life's necessities," or at least a "single, identifiable human need." Wilson v. Seiter, 501 U.S. 294 (1991) (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Second, an inmate must demonstrate deliberate indifference to prison conditions on the part of prison officials. Farmer v. Brennan, 511 U.S. 825 (1994); Wilson, 501 U.S. at 297; Rhodes, 452 U.S. at 347. "[O]nly the unnecessary and wanton infliction of pain implicates the Eighth Amendment. . . . To violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind.'" Farmer, 511 U.S. at 834 (quoting Wilson, 501 U.S. at 297).

Within the context of a claimed denial of medical treatment, an inmate must show: 1) that he or she was suffering from a "serious" medical need; and 2) that the prison officials were

"deliberately indifferent" to the serious medical need. *Id.* The first element requires a plaintiff to demonstrate a medical need that is <u>objectively</u> "sufficiently serious." A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person easily would recognize the necessity for a doctor's attention. <u>Monmouth County Correctional Institutional Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988). The second element requires a plaintiff to demonstrate that officials <u>subjectively</u> acted with a sufficiently culpable state of mind. Stated more preciously, a plaintiff must demonstrate that a defendant's acts constituted "an unnecessary and wanton infliction of pain" or were "repugnant to the conscience of mankind." <u>Gamble</u>, 429 U.S. at 105-106. With respect to claims that allege inadequate medical treatment, defendants may exhibit deliberate indifference by intentionally denying or delaying access to medical care, or by intentionally interfering with a treatment plan. *Id.* An inadvertent failure, however, to provide adequate medical care does not evidence deliberate indifference. *Id.* Furthermore, while an intentional refusal to provide <u>any</u> medical treatment to an inmate suffering from a serious medical need manifests deliberate indifference and is actionable under the Eighth Amendment, the Constitution does not

- 7 -

require that a prisoner receive every medical treatment that he or she requests or that is available elsewhere. Also, a disagreement as to the appropriate choice of medical treatment does not give rise to a constitutional violation; in sum, the right to be free from cruel and unusual punishment does not include the right to the treatment of one's choice. <u>Young v. Quinlan</u>, 960 F.2d 351, 358 n.18 (3d Cir. 1992) (an inmate's disagreement with prison personnel over the exercise of medical judgment does not state a claim for relief under section 1983); <u>White v. Napoleon</u>, 897 F.2d 103, 110 (3d Cir. 1990).

Although the Plaintiff's allegations and medical records clearly show that he is suffering from a serious medical need, they do not demonstrate that any of the Defendants acted with deliberate indifference with respect to the medical treatment that he was provided. The "deliberate indifference" standard for purposes of liability under section 1983 is a stringent standard of fault requiring proof that a defendant disregarded a known or obvious consequence of his action. <u>Board of County Commissioners of Bryan County v. Brown</u>, 520 U.S. 397, 410 (1997). The defendant must be both aware of facts from which the inference could be drawn that a substantial harm exists and he must also draw the inference. <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). An official is not deliberately indifferent if "he fails to alleviate a significant risk that he should have identified." *Id.*

Moreover, deliberate indifference to a serious medical need of a prisoner is distinguishable from a negligent diagnosis or treatment of a medical condition; only the former conduct violates the Eighth Amendment. Stated differently, medical malpractice may give rise to a tort claim in state court but does not necessarily rise to the level of a federal constitutional violation. Kost v. Kozakiewicz, 1 F.3d 176, 185 (3d Cir. 1993); Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993). The Supreme Court explained the difference between negligence and constitutional claims in Gamble, The court stated:

> [T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court under [a] . . . Tort Claims Act.

Gamble, 427 U.S. at 107 (internal citations and quotations omitted).

The Plaintiff's allegations, like the plaintiff's in Gamble, do not state a constitutional violation -a firm prerequisite for recovery under 42 U.S.C. § 1983. Importantly, the Plaintiff's allegations reveal that he has received constant medical care for his complaints. Construing the facts in his favor, as the court must, he fails to allege deliberate indifference. Based on the

facts alleged by Glenn, no reasonable jury could conclude that the Defendants were deliberately indifferent to the Plaintiff's needs or that they consciously disregarded a substantial risk of serious harm. To the contrary, the record is clear that Glenn, rightly or wrongly, was vigorously treated for his medical conditions. Like the inmate plaintiff in <u>Gamble</u>, however, the Plaintiff's allegations, at most, allege negligence.

### III. <u>CONCLUSION</u>

It is respectfully recommended that the Motions to Dismiss filed by Defendant Ken Diddle, Defendant Robert Tretinik and Defendant Dr. Barua all be granted.

In accordance with the Magistrate's Act, 28 U.S.C. § 636 (b)(1)(B) and (C), and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due by March 16, 2006. Responses to objections are due by March 26, 2006.

*Francis X. Caiazza*
FRANCIS X. CAIAZZA
UNITED STATES MAGISTRATE JUDGE

Dated: February 28, 2006

cc: Arthur J. Schwab
    United States District Judge

    Raheem Glenn, EN-5837
    SCI-Greene
    175 Progress Drive

Waynesburg, PA 15370

Christian D. Bareford
Office of Attorney General
Fifth Floor, Manor Complex
564 Forbes Avenue
Pittsburgh, PA 15219

David M. McQuiston
Thomson, Rhodes & Cowie
1010 Two Chatham Center
Pittsburgh, PA 15219

Elizabeth M. Yanelli
Pietragallo, Bosick & Gordon
One Oxford Centre
38th Floor
Pittsburgh, PA 15219